UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                               :

BEYOND BESPOKE TAILORS, INC., et al., :
                                               :
                          Plaintiffs, :
                                               :                     20-CV-5482 (VSB)
                    - against -            :
                                               :            **OPINION & ORDER**
                                               :

JAMES BARCHIESI, et al.,            :
                                               :
                            Defendants.  :
                                               :
--------------------------------------------------------X

<u>Appearances</u>:

Michael Robert Gordon
GordonLaw LLP
Katonah, NY
*Counsel for Plaintiffs*

James Barchiesi
Stroudsburg, PA
*Pro se Defendant*

<u>VERNON S. BRODERICK, United States District Judge</u>:

         Plaintiffs Beyond Bespoke Tailors, Inc. ("Beyond Bespoke Tailors" or "BBT") and Nick

Torres ("Torres") bring this action against Defendant James Barchiesi ("Barchiesi") and his

associated businesses Defendants Worksite LLC, Worksite Accountants and Advisors, Worksite

Capital Partners LLC, Worksite Interactive LLC, Worksite Ventures, and Roth & Associates

(together, "Corporate Defendants"),[1] asserting fraud, breach of fiduciary duty, and breach of

---

[1] The parties have subsequently represented that three of the six Corporate Defendants—Worksite Accounts and Advisors, Worksite Ventures, and Roth & Associates—are fictitious names.  (Doc. 5 ¶ 2.)  Worksite LLC was a Pennsylvania LLC, which name has since been amended, and Worksite Interactive LLC is a Pennsylvania LLC owned by another Pennsylvania LLC, of which Barchiesi is the sole member.  (*Id.*)  However, the parties informed me that "Defendant Worksite Capital Partners LLC does not exist and did not exist at any time." (*Id.*)  As discussed

contract claims.  Before me are Defendants' partial motion to dismiss under Rule 12(b)(6) and

Defendants' motion to transfer the remaining claims to the Middle District of Pennsylvania.

The stay in this case, put in place to permit the Corporate Defendants an opportunity to

find counsel to represent them, is hereby LIFTED.  Because venue in the Southern District of

New York is proper, and transfer would be unjust, Defendants' motion to transfer is DENIED.

Because Plaintiffs have plausibly alleged claims of fraud and breach of fiduciary duty, and

because Defendants' motion to strike Plaintiffs' damages request is premature, Defendants'

partial motion to dismiss is DENIED.

## I.   Factual Background and Procedural History[2]

### A.   Complaint

On August 27, 2019, Torres and Beyond Bespoke Tailors initiated a lawsuit in the

Supreme Court of New York, New York County against Barchiesi and Corporate Defendants by

filing a Summons with Notice.  (*See* Doc. 99.)  On June 17, 2020, Plaintiffs filed an Amended

Summons with Notice.  (*See id.*)  On July 16, 2020, Defendants filed a notice of removal on the

basis of diversity jurisdiction, representing that all Defendants are domiciled in Pennsylvania.

(Doc. 1 ¶¶ 3 & 4.)  On October 27, 2020, Plaintiffs filed the operative complaint in this case.

(Doc. 4 ("Compl.").)

Plaintiff Beyond Bespoke Tailors is a tailoring business organized under New York law

and based in Manhattan.  (Compl. ¶¶ 2, 12.)  Plaintiff Torres is the founder of Beyond Bespoke

---

further *infra*, on February 4, 2022, I granted a default judgment as to liability against Defendants Worksite LLC, Worksite Accountants and Advisors, Worksite Capital Partners, LLC, Worksite Interactive LLC, Worksite Ventures, and Roth & Associates.  (Doc. 99.)

[2] The facts in Section I are recited for background only.  However, in considering Defendants' motion to dismiss, I assume the allegations in the Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

Tailors.  (*Id.* ¶ 2.)  Torres is a resident of New York, specifically, Staten Island.  (*Id.* ¶ 13.)

Defendant Barchiesi is the owner and manager of Corporate Defendants, which are businesses

that provided financial bookkeeping, accounting, and tax services to Plaintiffs.  (*Id.* ¶¶ 4, 26.)

Corporate Defendants are organized under Pennsylvania law and based in Pennsylvania.  (*Id.* ¶¶

15–20.)  As discussed further *infra*, Barchiesi claims to be a resident of Pennsylvania.[3]  (*See,*

*e.g.*, Doc. 71, "Answer" ¶ 14.)

 Plaintiffs have sued Defendants for fraud, breach of fiduciary duty, and breach of

contract.  (Compl. ¶ 1.)  Essentially, Barchiesi leveraged a personal friendship with Torres to

convince Torres to hire Corporate Defendants to manage both his personal and business finances.

(*See id.* ¶¶ 28, 29, 33.)  Defendants "repeatedly assured Plaintiffs that Defendants were highly

skilled, competent and experienced in financial planning."  (*Id.* ¶ 27.)  Throughout the business

relationship, Defendants repeatedly provided Plaintiffs assurances in writing that Defendants

were actively and competently managing Plaintiffs' finances.  For example, Barchiesi confirmed

in writing on March 22, 2016 that he was "'coordinating . . . final payment of their 2014 Federal

IRS [tax payments],'" (*id.* ¶ 42), and on October 5, 2017 that he was "aware of and was

monitoring BBT's tax situation" and addressing Plaintiffs' "tax filing needs," (*id.* ¶ 47).

Defendants also "repeatedly promis[ed] to act as a fiduciary," (*id.* ¶ 37), and Barchiesi at least

once "confirmed in writing" that "Defendants would owe fiduciary obligations" to Beyond

Bespoke Tailors, (*id.* ¶ 38).  On April 4, 2018, Barchiesi further directed then-president of Roth

& Associates, Foster Rankin, to request a Power of Attorney to act on Plaintiffs' behalf.  (*Id.* ¶

50.)  Rankin represented to Plaintiffs that he was a Certified Public Accountant ("CPA").  (*Id.*)

---

[3] Plaintiffs allege that Barchiesi is a resident of either Pennsylvania or Virginia.  (*See, e.g.*, Compl. ¶ 14.)  In any event, neither party suggests that Barchiesi is domiciled in New York.  (*See* Doc. 51, at 3.)  Because Plaintiffs also seek over $500,000 in damages, (*see* Compl. ¶ 80), there is diversity jurisdiction.  28 U.S.C. § 1332(a)(1).

However, Rankin was not a CPA, a fact that Barchiesi knew but did not tell Plaintiffs or do anything to dispel Plaintiffs' belief.  (*Id.* ¶ 51.)  Barchiesi later "confirmed in writing" that "Defendants are all part of a single, unified organization controlled by Barchiesi."  (*Id.* ¶ 56.)

Ultimately, Plaintiffs terminated their relationship with Roth & Associates on September 26, 2018, (*id.* ¶ 55), and afterwards, Barchiesi "confirmed in writing" that "Roth had made substantial errors on Plaintiffs' tax returns," (*id.* ¶ 56).  Defendants committed the following errors, among others:

- "directed Plaintiffs to pay advance sales tax beyond what was required;"

- "mishandled the accounting" for an employee pension plan;

- "advised Plaintiffs to borrow money to pay their taxes even though they had sufficient cash to support the required tax payments;"

- failed to issue required forms;

- "caused Plaintiffs to make a $42,000 tax payment for a $32,000 tax liability;"

- "repeatedly" caused Plaintiffs to make "late and miscalculated" tax payments resulting in additional penalties; and

- knowingly issued false statements concerning the "discharge of a non-existent debt."

(*Id.* ¶¶ 60–67.)  Moreover, by organizing the Corporate Defendants "into a multi-layer network of companies—companies nesting within one another," Barchiesi was able to effectively "extract duplicate fee payments from Plaintiffs for the same work."  (*Id.* ¶ 68.)  "In an attempt to cover up his misdeeds, Barchiesi claimed after the termination of Plaintiffs' relationship with Defendants that he was not aware of what Roth was doing and that Roth's president, Mr. Rankin, was acting on his own or in ways unknown to Barchiesi," which was false, "as Barchiesi installed Mr. Rankin . . . and then created Roth to appear to be a separate and standalone accounting firm."

(*Id.* ¶ 7.)  Based on these facts, Plaintiffs brought claims of fraud, (*id.* ¶¶ 71–80), breach of

fiduciary duty, (*id.* ¶¶ 81–87), breach of contract, (*id.* ¶¶ 88–93), promissory estoppel, (*id.* ¶¶

94–99), and quasi-contract, (*id.* ¶¶ 100–107).

### B. *Partial Motion to Dismiss and Motion to Transfer Venue*

On November 17, 2020, Defendants filed a partial motion to dismiss and motion to

transfer venue.  (Doc. 10 ("MTD").)  Defendants move to dismiss Plaintiffs' claims of fraud and

breach of fiduciary duty, and to strike Plaintiffs' request for punitive damages and attorneys'

fees.  (MTD 1.)  Defendants move to transfer the remaining breach of contract, promissory

estoppel, and quasi-contract claims to the Middle District of Pennsylvania.  (*Id.*)

On December 23, 2020, Plaintiffs filed a memorandum of law in opposition.  (Doc. 15

("Pls.' Opp.").)  The same day, Plaintiff Torres also filed a declaration in opposition to

Defendants' motion to transfer venue, with two exhibits.  (Doc. 14 ("First Torres Decl.").)

Among other things, Torres declared that he first met Barchiesi around 2010 in Manhattan, when

Barchiesi came to Beyond Bespoke Tailors for tailoring work.  (*Id.* ¶ 9.)  Torres said that

Barchiesi first offered to provide financial bookkeeping, accounting, and tax services to Plaintiffs

around 2015, when Barchiesi was at Beyond Bespoke Tailors for a fitting.  (*Id.* ¶ 11.)  Torres

said that Defendants began weekly meetings with Torres in Barchiesi's office at 315 Madison

Avenue in Manhattan.  (*Id.* ¶ 11.)  Torres attached Outlook invitations of such purported

meetings to his declaration.  (*Id.* ¶ 13; Doc. 14-1 ("First Torres Decl. Ex. 1").)  Torres declared,

"[a]ll of the business meetings I had with Mr. Barchiesi were held in Manhattan," and "at no

time did I ever travel to Pennsylvania for meetings with Mr. Barchiesi to discuss business."

(First Torres Decl. ¶¶ 16, 22.)  Additionally, Torres mentioned that Barchiesi occasionally came

to Manhattan "to attend various gala events" and "discuss with [Torres] various business issues;"

Torres also attached photos of Barchiesi at such events as Exhibit 2.  (*Id.* ¶¶ 18–20; Doc. 14-2

("First Torres Decl. Ex. 2").).  Finally, Torres asserted that Beyond Bespoke Tailors has

"suffered tremendously from Covid-19," and that transferring the case to Pennsylvania would

"pose[] an undue burden" on Plaintiffs by forcing Torres to "retain Pennsylvania counsel, travel

to Pennsylvania . . . and pull [him]self away from [his] business more so than if the case

remained here."  (First Torres Decl. ¶¶ 24, 25.)

    On January 11, 2021, Defendants filed a reply in support of their partial motion to

dismiss and motion to transfer venue.  (Doc. 20 ("Defs.' Reply").)  Barchiesi likewise filed a

declaration in support of the reply.  (Doc. 20-1 ("First Barchiesi Decl.").)  Barchiesi claimed he

is domiciled in Stroudsburg, Pennsylvania, and that he has lived in Pennsylvania for 15 years and

has "no plans to move at any time in the future."  (*Id.* ¶ 4.)  According to Barchiesi, Plaintiffs are

Defendants' only New York-based clients.  (*Id.* ¶ 5.)  Barchiesi asserted that he first met Torres

around 2010 when Barchiesi "received an advertisement . . . directed to [his] home in

Pennsylvania," which "stated that Nick Torres performed house calls" for tailoring services.  (*Id.*

¶ 6.)  When he responded to Torres' advertisement, Torres "convinced [him] to come to

Manhattan instead for services."  (*Id.*)  According to Barchiesi, Torres first decided to begin a

business relationship with Defendants during a conversation at Barchiesi's home in Pennsylvania

in 2015.  (*Id.* ¶ 7.)  Barchiesi declared, "[t]here were no weekly meetings scheduled in New

York," but rather "one singular meeting at the 315 Madison Avenue coworking space."  (*Id.* ¶ 8.)

Instead, Barchiesi asserted that "[b]usiness meetings occurred regularly in Pennsylvania and

often centered around the launch of Nick Torres' new clothing line and business," called

Bespoke by Nick.  (*Id.* ¶ 10.)  Barchiesi attached documents related to Bespoke by Nick as

Exhibits A1–A4.  (*Id.* ¶¶ 8, 10; Docs. 20-2, 20-3, 20-4 & 20-5 ("First Barchiesi Decl. Ex. A1,

A2, A3 & A4").)  Barchiesi claimed that Torres entered into a contract with Worksite Capital

Partners LP that "contains a forum selection clause requiring that any lawsuits be brought in the

Pennsylvania federal courts."  (First Barchiesi Decl. ¶ 11; *see* Doc. 20-6 ("First Barchiesi Decl.

Ex. A5").)  Worksite Capital Partners LP is not a named Defendant, but Barchiesi suggested that

Plaintiffs meant to sue Worksite Capital Partners LP, rather than Worksite Capital Partners LLC,

a named Corporate Defendant that does not exist.  (First Barchiesi Decl. ¶ 11.)  Finally, Barchiesi

claimed that Defendants have more than 20 non-party witnesses based in Pennsylvania, (*id.* ¶¶

13–15), and stated that he provided a list of these witnesses to Plaintiffs' counsel, (*id.* ¶ 14 n.2).

### C.  *Supplemental Filings*

On January 14, 2021, Plaintiffs moved to strike the First Barchiesi Declaration and

exhibits, on the grounds that Defendants had improperly filed the information for the first time

on reply.  (Doc. 21.)  Defendants wrote in opposition, arguing that factual information may be

submitted on reply, and alternatively, that Defendants would not object to Plaintiffs' filing a sur-

reply.  (Doc. 22.)  On June 2, 2021, I granted Plaintiffs leave to file a sur-reply.  (Doc. 32.)

On June 23, 2021, Plaintiffs filed their sur-reply, (Doc. 39, "Pls.' Sur-Reply"), and

Plaintiffs' counsel submitted a declaration in support with 19 exhibits, (Doc. 37 ("Gordon

Decl."); Docs. 37-1–37-19 ("Gordon Decl. Exs. 1–19")).  Primarily, Plaintiffs' sur-reply argues

that "Barchiesi has not been honest with this Court about where he lives." (Pls.' Sur-Reply 1.)

Plaintiffs allege that although Barchiesi claims to have been a Pennsylvania resident for 15 years,

he has, since 2018, represented to various government entities that he lives in either Virginia

(near Washington, D.C.) or New Jersey.  (*Id.* at 1, 3–6.)  Indeed, Plaintiffs allege that on

September 18, 2018, Barchiesi specifically denied that he was a resident of Pennsylvania in an

answer to another lawsuit pending in the Middle District of Pennsylvania.  (*Id.* at 4 (citing

Gordon Decl. Ex. 3).)  Plaintiffs also provided Defendants' witness list, (*see* Gordon Decl. Ex. 17), to argue that all Defense witnesses for whom Defendants have provided addresses live within 100 miles of the Southern District of New York courthouse, and thus would not be unduly inconvenienced.  (Pls.' Sur-Reply 6–7.)  Further, Plaintiffs argue that the Pennsylvania forum selection clause is irrelevant because Plaintiffs did not sue or intend to sue Worksite Capital Partners LP, the party to the contract with the forum selection clause, and Plaintiffs are not asserting any claims arising out of that contract.  (Pls.' Sur-Reply 7–8.)

As part of Plaintiffs' sur-reply, Torres filed a second declaration, responding to claims in Barchiesi's first declaration.  (Doc. 38, "Second Torres Decl.")  Among other things, Torres denied sending "any advertisements to [Barchiesi] or anyone else in Pennsylvania offering to make 'house calls' there" and added, "[w]e do not offer and never have offered or made house calls to anyone in Pennsylvania."  (*Id.* ¶¶ 5 & 6.)  Torres called Barchiesi's assertion that there were "no weekly meetings scheduled in New York" "an outright lie."  (*Id.* ¶ 10.)  Torres attached even more Outlook calendar invitations reflecting such purported meetings.  (*Id.*; Doc. 38-1 ("Second Torres Decl. Ex. 1").)  Additionally, Torres declared that he never "established an operating business in Pennsylvania."  (Second Torres Decl. ¶ 11.)  Torres said, "I did agree to the formation of a Pennsylvania company for tailoring on the expectation that I might open a tailoring business there, but I never did."  (*Id.*)

After the motion to dismiss briefing was complete, Plaintiffs requested leave on June 29, 2021 to submit an additional declaration and exhibit, "showing that the litigation papers . . . delivered to Defendant Barchiesi at his home in Arlington, Virginia . . . were, in fact received by or on behalf of Defendant Barchiesi at that address."  (Doc. 40; *see* Doc. 40-1 ("Second Gordon Decl.").)  The next day, Defendants requested leave to submit another declaration in response.

(Doc. 41; *see* Doc. 41-1 ("Second Barchiesi Decl.").)  In his second declaration, Barchiesi again

claimed that he currently lives in and has been a resident of Pennsylvania for 15 years, and that

his current address is in Stroudsburg, Pennsylvania.  (Second Barchiesi Decl. ¶ 2.)  Barchiesi

said he has not resided in the Arlington, Virginia residence "for years" but that the front desk

"will accept mail and sometimes forward mail for former residents as a courtesy."  (*Id.* ¶¶ 3, 5.)

On July 2, 2021, I granted defense counsel's motion to withdraw and stayed the case to

allow Defendants time to secure new counsel.  (Doc. 42.)  I also held in abeyance any ruling on

the motion to dismiss and motion to transfer, as well as any ruling on the parties' request for

leave to file declarations related to the motion to transfer, (Docs. 40 & 41), until Defendants

retained new counsel.  (Doc. 43.)  On August 19, 2021, I extended Defendants' deadline to

secure new counsel to September 20, 2021.  (Doc. 47.)  Defendants never retained new counsel.

On October 6, 2021, Barchiesi, at this point proceeding pro se, filed a third declaration

dated October 1, 2021, again stating his current residence is in Stroudsburg, Pennsylvania and

denying that he lives at the Arlington, Virginia residence.  (Doc. 54 ("Third Barchiesi Decl.").)

Plaintiffs argue that I should reject Barchiesi's third declaration because the record on the venue

issue has closed, and "the 'declaration' does not contain the requisite perjury wording mandated

by 28 U.S.C. § 1746."  (Doc. 51, at 2 n.3.)  Since Barchiesi's third declaration is substantively

similar to his second declaration, which was prepared with advice and assistance of counsel, I

will consider his second declaration in place of his third declaration.

Since Corporate Defendants never secured new counsel, and since corporations may not

appear pro se in federal court, *see, e.g.*, *Rowland v. California Men's Colony, Unit II Men's

Advisory Council*, 506 U.S. 194, 201–02 (1993), on December 22, 2021, I directed Plaintiffs to

seek default judgment against Corporate Defendants.  (Doc. 82).  Plaintiffs did so.  (Docs. 85–

87).  On January 7, 2022, I issued an order to show cause why an order should not be issued

granting default judgment in favor of Plaintiffs against Corporate Defendants as to liability.

(Doc. 88.)  No opposition was filed, and no one registered any opposition at the show cause

hearing.  On February 4, 2022, I entered default judgment against Corporate Defendants.  (Doc.

99.)  As I explained on the record, I will hold in abeyance any decision on Corporate

Defendants' damages—including any decision about whether to refer the action to a magistrate

judge for an inquest on damages—until the remaining claims against Barchiesi are resolved.

Barchiesi has elected to proceed pro se.

   Accordingly, the stay of this action allowing Defendants time to secure new counsel is

LIFTED.  Furthermore, the parties' requests for leave to file declarations related to the motion to

transfer, (Docs. 40 & 41), are GRANTED, and I consider those declarations, (Second Gordon

Decl.; Second Barchiesi Decl.), in connection with the motion to transfer.

**II.**   **Discussion**

   **A.**  ***Motion to Transfer***

   **1.  Legal Standard**

   Section 1406 provides that "[t]he district court of a district in which is filed a case laying

venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Whether or not venue is wrong or improper depends entirely on whether the federal district court

in which a case is brought satisfies the requirements of federal venue laws.  *Alt. Marine Constr.*

*Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).

   The question of whether venue is wrong or improper is generally determined with

reference to 28 U.S.C. § 1391, which provides that a plaintiff may bring a civil action in:

    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

    (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  For purposes of § 1391(b)(1), "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled."  § 1391(c)(1).  "Domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"  *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).

    If a case falls outside of the three categories spelled out in § 1391(b), venue is improper, and the case must either be dismissed under Fed. R. Civ. P. 12(b)(3), or be transferred to a proper venue under 28 U.S.C. § 1406(a).  "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968(RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)).  To meet this burden, the plaintiff must plead facts sufficient for a "'prima facie showing' of jurisdiction or venue."  *Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir.2005)).  "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.  The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'"  *Concesionaria DHM, S.A. v. Int'l Fin. Corp.,* 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *EPA ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183

(S.D.N.Y. 2001)).

If venue is proper, a district court still "may transfer any civil action to any other district or division where it might have been brought," "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). To determine whether transfer is warranted, a district court engages in a two-step inquiry. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006). "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice." *Id.* (internal quotation marks and citations omitted). These factors include:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Ahrens v. CTI Biopharma Corp.*, 16 Civ. 1044 (PAE), 2016 WL 2932170, at *2 (S.D.N.Y. May 19, 2016) (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *4 (S.D.N.Y. Oct. 28, 2011)).

The party seeking transfer bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). This burden is carried by "list[ing] the . . . witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each

witness' testimony." *Command Arms Accessories, LLC v. ME Tech. Inc.*, 19 Civ. 6982 (LLS), 2019 WL 5682670, at *6 (S.D.N.Y. Oct. 31, 2019) (quoting *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66–67 (S.D.N.Y. 1993)).  In deciding whether this standard has been met, courts in the Second Circuit consider all materials they find compelling and do not restrict their evaluations only to materials that would satisfy the admissibility requirements of the Federal Rules of Evidence.  *See, e.g.*, *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617–18 (S.D.N.Y. 2016) (looking to representations made in attorneys' letters as to location of witnesses); *Kaufman v. Salesforce.com, Inc.*, No. 20 Civ. 6879 (JPC) (SN), 2021 WL 2269552, at *5 (S.D.N.Y. June 3, 2021) (rejecting argument that a transfer analysis should not credit assertions made in a memorandum of law); *Baduria v. Sealift Holdings, Inc.*, 451 F. Supp. 3d 248, 256–57 (E.D.N.Y. 2020) (granting motion to transfer while relying on memoranda of law); *Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, 21 Civ. 87 (KPF), 2021 WL 2688722, at *4 (S.D.N.Y. June 30, 2021) (crediting attorney declarations and memoranda of law in granting motion to transfer).

### 2.  Application

I first consider whether venue in the Southern District of New York is proper.  I find that the Southern District of New York is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2), and Plaintiffs have thus carried their burden of proving proper venue.  In particular, I credit Torres's sworn declaration that "all of the business meetings" between Plaintiffs and Defendants that culminated in the instant litigation "were held in Manhattan."  (First Torres Decl. ¶ 16.)  This testimony was corroborated by the voluminous Outlook calendar invitations reflecting such meetings offered by Plaintiff.  (First Torres Decl. Ex. 1; Second Torres Decl. Ex. 2.)

Although Barchiesi has filed his own sworn declaration disputing Torres's declaration, (*see generally* First Barchiesi Decl.), his denials are not dispositive for several reasons.  As a threshold matter, I am required to "resolve all factual conflicts in favor of the plaintiff." *Concesionaria DHM*, 307 F. Supp. 2d at 555.  Moreover, to support his declaration, Barchiesi has only submitted evidence that Torres pursued a different prospective business venture in Pennsylvania, Bespoke by Nick, (*see* First Barchiesi Decl. Ex. A1, A2, A3 & A4), which is not the subject of the Complaint—and Torres declared that he never actually "established an operating business in Pennsylvania," (Second Torres Decl. ¶ 11).  I also disregard the Pennsylvania forum selection clause in Torres's contract with Worksite Capital Partners LP, (*see* First Barchiesi Decl. Ex. A5 ¶ 17), because Plaintiffs did not sue Worksite Capital Partners LP, and Plaintiffs are not asserting any claims arising out of that contract, (*see* Pls.' Sur-Reply 7–8). Finally, even if I were to resolve all factual conflicts in favor of Defendants, venue in the Southern District of New York would still be proper.  The Complaint arises out of the financial bookkeeping, accounting, and tax services that Defendants provided to Plaintiffs, who are based in Manhattan and Staten Island.  Indeed, Defendants assisted Plaintiffs with New York State tax matters.  (*See, e.g.*, Compl. ¶¶ 40, 52, 60, 65.)  Necessarily, a "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York.

Although I find that venue in the Southern District of New York is proper, I still have the discretion under 28 U.S.C. § 1404(a) to transfer the action to the Middle District of Pennsylvania.  As a first step, I find that Plaintiffs could have initially brought this action in the Middle District of Pennsylvania if they had wished to do so, since material communications were sent to and from that district.  (*See, e.g.*, Compl. ¶¶ 35, 40–42, 44–46, 48–49, 52–54.)  *See also Gregory v. Pocono Grow Fertilizer Corp.*, 35 F. Supp. 2d 295, 299 (W.D.N.Y. 1999) ("Courts in

this Circuit have held that the substantial activities' standard may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." (internal quotation marks omitted)).  Therefore, the burden shifts to Defendants to prove that transfer is justified by clear and convincing evidence.  *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114.

Defendants fall far short of their burden.  As an initial matter, I am troubled by the evidence submitted by Plaintiffs supporting their accusation that Barchiesi lied to me concerning his residency.  (*See generally* Pls.' Sur-Reply.)  If I believe Barchiesi that he has been a resident of Pennsylvania for the last 15 years, as he has repeatedly sworn, (*see* First Barchiesi Decl. ¶ 4; Second Barchiesi Decl. ¶ 2), then it appears that Barchiesi lied to the Honorable Robert D. Mariani in the Middle District of Pennsylvania, when Barchiesi denied, through counsel, that he was a resident of Pennsylvania less than four years ago.  (*See* Gordon Decl. Ex. 3; *see also* Answer ¶ 2, *Sons of Arthritis LLC v. Low Tide Group et al.*, No. 3:18-cv-01456 (M.D. Pa. September 18, 2018), ECF 9 ("Defendants deny that Barchiesi is a resident of Pennsylvania.").) In other words, no matter how I view the evidence, Barchiesi lied in one of the proceedings.  The justice system cannot operate this way.  *Cf. United States v. Cornielle*, 171 F.3d 748, 753 (2d Cir. 1999) ("No legal system can long remain viable if lying under oath is treated as no more than a social solecism.  Swearing to tell the truth is a solemn oath, the breach of which should have serious consequences.")

Assuming for the sake of argument that Barchiesi is domiciled in Pennsylvania, I consider the factors relating to the convenience of transfer and the interests of justice.  Even if Barchiesi lives in Pennsylvania, his residency is only relevant to the second factor, the convenience of the parties.  *See Ahrens*, 2016 WL 2932170, at *2.  Given that Barchiesi, by his

own admission, traveled to Manhattan to receive tailoring services from Plaintiffs for years, (*see, e.g.*, First Barchiesi Decl. ¶ 7), I find that Barchiesi fails to present clear and convincing evidence that traveling to Manhattan for occasional court appearances would pose an undue burden to him.  On the other hand, there is evidence that transferring the case to the Middle District of Pennsylvania would pose a sizeable burden to Plaintiffs.  (*See, e.g.*, First Torres Decl. ¶¶ 25, 26.)  As for the convenience of witnesses—"the most important factor in considering a § 1404(a) motion to transfer," *Command Arms Accessories*, 2019 WL 5682670, at *5 (internal quotation marks omitted)—Defendants have failed to carry their burden of "specifically list[ing] the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony," *id.* at *6 (internal quotation omitted).  Defendants have provided only conclusory claims that: (1) "[t]he numerous witnesses for Defendants with knowledge of the facts of this matter live in Pennsylvania, specifically in or around Stroudsburg, Pennsylvania," and (2) "[t]he number of possible witnesses for Defendant[s] exceeds 20."  (First Barchiesi Decl. ¶¶ 13 & 14.)  Indeed, it was Plaintiffs who provided Defendants' witness list to me, (*see* Gordon Decl. Ex. 17), noting that most of Defendants' witnesses appear to live within 100 miles of the Southern District of New York courthouse, (Pls.' Sur-Reply 6–7), and therefore can be compelled to testify in this district, *see* Fed. R. Civ. P. 45(c)(1)(A).  Ultimately, Defendants have not shown by clear and convincing evidence that any of the Section 1404(a) factors favor transfer of the action to the Middle District of Pennsylvania.  Accordingly, Defendants' motion to transfer this action is DENIED.

### B.   *Motion to Dismiss*

#### 1.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).  A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

### 2. **Application**

#### a. <u>Fraud</u>

##### i. *Fraud Claim Pleaded with Specificity*

Defendants' first argument is that Plaintiffs' fraud claim is not "pleaded with specificity" as required by Federal Rule of Civil Procedure 9(b).  (MTD 4.)  To state a claim for common law fraud under New York law, a plaintiff must allege facts showing:  "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury."  *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, N.E.2d 1370, 1373 (1996)).

In federal court, a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and allege facts "that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  A strong inference of fraudulent intent may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.* at 290–91 (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).  "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in

isolation, meets that standard." *Tellabs*, 551 U.S. at 322–23 (alteration in original).  Ultimately,

"[t]he key purpose of these requirements is to 'inform each defendant of the nature of its alleged

participation in the fraud.'"  *Mahoney v. Endo Health Sols., Inc.*, No. 15CV9841(DLC), 2016

WL 3951185, at *10 (S.D.N.Y. July 20, 2016) (quoting *Loreley Fin.*, 797 F.3d at 172).

Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 9(b).

Although Plaintiffs' Complaint is not a model of clarity, Plaintiffs do specifically allege that

Defendants made misrepresentations about Defendants' skills and qualifications in bookkeeping,

accounting, tax reporting, and financial planning, so that Plaintiffs would agree to let Defendants

manage Plaintiffs' finances.  (*See, e.g.*, Compl. ¶¶ 26–27, 37, 50–51, 72.)  Contrary to

Defendants' assertion, (*see* Defs.' Reply 2), Plaintiffs do specifically allege that Defendants

knew those representations about Defendants' skills and qualifications were false when made,

(*see* Compl. ¶ 74 ("At the time Defendants made those statements to Plaintiffs, Defendants knew

they were not true.); *see also id.* ¶¶ 7, 51, 66–67).  Plaintiffs also specifically allege that they

relied on Defendants' misrepresentations and suffered injury as a result.  (*See id.* ¶¶ 28–29, 31,

33, 57–68, 75–80.)

Moreover, I also find that Plaintiffs set forth, with particularity, facts that give rise to a

strong inference of fraudulent intent.  *See Lerner*, 459 F.3d at 290–91.  First, Plaintiffs'

allegations about the prior social relationship between Torres and Barchiesi, (*see, e.g.*, Compl. ¶¶

28, 29, 33, 37), give rise to the inference that Defendants had "both motive and opportunity" to

abuse Plaintiffs' trust.  *See Lerner*, 459 F.3d at 290–91.  Second, Plaintiffs' allegations about the

multitude of serious errors and misrepresentations Defendants made in managing Plaintiffs'

finances, (*see, e.g.*, Compl. ¶¶ 39, 57–68), give rise to the inference that Defendants were

engaged in either "conscious misbehavior or recklessness" when Defendants persuaded Plaintiffs

to hand over control of their finances.  *See Lerner* at 290–91.  While it is possible, accepting all the alleged facts as true, that Defendants were simply unable to provide the quality of financial services promised because they were in over their heads—not because they had any fraudulent intent—the more compelling inference is that Defendants were perpetrating a fraud against Plaintiffs.  As such, Plaintiffs' fraud claim is pleaded with specificity.

       ii.      *Fraud Claim Not Duplicative of Contract Claims*

      Defendants' second argument is that Plaintiffs' fraud claim is duplicative of Plaintiffs' breach of contract claims.  (*See* MTD 4–5.)  "[U]nder New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007).

      Plaintiffs have done all three.  New York law distinguishes between a promise to perform, which "gives rise only to a breach of contract cause of action," and a "misrepresentation of a present fact," which "gives rise to a separate cause of action for fraudulent inducement."  *Id.* at 184.  Plaintiffs allege that, separate and apart from Defendants' failure to perform under the parties' contract, Defendants made misrepresentations about the extent of their skills and qualifications in bookkeeping, accounting, tax reporting, and financial planning.  (*See, e.g.*, Compl. ¶¶ 26–27, 37, 50–51, 72.)  The Second Circuit has held that because a "misrepresentation of present facts is collateral to the contract," such a misrepresentation "involves a separate breach of duty."  *Merrill Lynch*, 500 F.3d at 184 (quoting *First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (1st Dep't 1999)).

This is true regardless of whether that misrepresentation "may have induced the plaintiff to sign the contract." *Id.*  Therefore, Plaintiffs have alleged misrepresentations that are collateral to the contract, and that created a legal duty separate from the duty created by the contract.  Plaintiffs also seek punitive damages, (Compl. ¶¶ 69 & 70), which are recoverable for a fraud claim, but not for a contract claim where there is no allegation that the wrong was directed at the public. *See TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005) ("[P]unitive damages are not recoverable for breach of contract where . . . the wrongful conduct is not directed at the public at large."); *cf. Commerzanstalt v. Telewide Sys., Inc.*, 880 F.2d 642, 649 (2d Cir. 1989) ("[P]unitive damages may be awarded when fraud is gross, wanton, or willful, whether or not directed at the public generally.").  As a result, Plaintiffs' fraud claim is not duplicative of Plaintiffs' breach of contract claims.

### b.  Breach of Fiduciary Duty

Defendants further argue that Plaintiffs fail to plead the existence of a fiduciary relationship, because "[a]rm's length business transactions do not give rise to a fiduciary relationship, absent special circumstances." (MTD 6).  A "fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735, 741 (2012) (citation omitted).  Such a relationship exists where "influence has been acquired . . . [and] confidence has been reposed," *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 502 (S.D.N.Y. 2011) (quoting *Penato v. George*, 383 N.Y.S.2d 900, 904–05 (2d Dep't 1976)), or, put the opposite way, where one party "reposes confidence in another and reasonably relies on the other's superior expertise or knowledge," *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011) (quoting *WIT Holding*

*Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (2d Dep't. 2001)).  An "arms-length business relationship"

will not create a fiduciary obligation.  *See id.* at 194.

　　　A cause of action for breach of fiduciary duty that duplicates a breach of contract claim

must be dismissed.  *Bullmore v. Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 148 (1st

Dep't 2007).  However, the mere "existence of a contract between the parties defining the broad

contours of their relationship does not preclude a finding of a fiduciary relationship."  *St. John's*

*Univ.v. Bolton*, 757 F. Supp. 2d 144, 166(E.D.N.Y. 2010).  To the contrary, "[i]f a contract

establishes a relationship of trust and confidence between the parties," that relationship may give

rise to "a fiduciary duty . . . which is independent of the contractual obligation."  *Id.* (quoting

*Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 305

(S.D.N.Y. 2005)).  Thus, the same conduct that "constitute[s] the breach of a contractual

obligation may also constitute the breach of a duty arising out of the relationship created by

contract" so long as it is "independent of the contract itself."  *Id.* (quoting *Mandelblatt v. Devon*

*Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (collecting cases)); *see also Bullmore*, 846

N.Y.S.2d at 148 ("Professionals such as investment advisors, who owe fiduciary duties to their

clients, may be subject to tort liability for failure to exercise reasonable care, irrespective of their

contractual duties," because "it is policy, not the parties' contract, that gives rise to a duty of

care").  In addition, a court may look "[b]eyond what may be memorialized in writing . . . to

whether a party reposed confidence in another and reasonably relied on the other's superior

expertise or knowledge."  *Bolton*, 757 F. Supp 2d at 167 (quoting *Wiener v. Lazard Freres &*

*Co.*, 672 N.Y.S.2d 8, 14 (1st Dep't 1998)).

　　　Courts have recognized that New York law on breach of fiduciary duty is broad and

amorphous, *see Refco*, 826 F. Supp. 2d at 502; *Ellington Credit Fund*, 837 F. Supp. 2d at 191,

and so whether one party owes another a fiduciary duty is a fact-specific inquiry, *see Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 415 (S.D.N.Y. 2010).  "New York courts generally avoid dismissing a claim of breach of fiduciary duty . . . because it usually involves a question of fact:  whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence."  *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009), *aff'd.*, 382 Fed. App'x 107 (2d Cir. 2010).

Plaintiffs have clearly pleaded the existence of a fiduciary relationship.  Plaintiffs allege not only that Barchiesi "persuad[ed] Plaintiffs to trust Defendants with their business and bank accounts," (Compl. ¶ 4), but also that Barchiesi explicitly "represented to Plaintiffs that he and his companies were fiduciaries—financial advisors and consultants who and that would take care of Mr. Torres and BBT—whom and that Plaintiffs, who do not have financial backgrounds and who are not financially sophisticated, could trust," (*id.* ¶ 9).  Indeed, the Complaint alleges that Barchiesi repeatedly promised that he was acting as a fiduciary, and on at least one occasion made that representation to Plaintiffs in writing.  (*See id.* ¶¶ 37 & 38.)  Plaintiffs' breach of fiduciary duty claim must survive the motion to dismiss.

c.   Damages

Finally, Defendants ask me to dismiss Plaintiffs' prayer for relief for punitive damages and attorneys' fees.  (MTD 7–8.)  Plaintiffs argue this request is procedurally premature.  (Pls.' Opp. 14–15.)  Plaintiffs are correct.  *See, e.g.*, *Horowitz v. Spark Energy, Inc.*, No. 19CIV7534PGGDCF, 2020 WL 4917180, at *6 (S.D.N.Y. Aug. 21, 2020) ("Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature." (citation omitted)) (collecting cases).[4]

---

[4] Although Defendants cited two cases in this Circuit "wherein punitive damages were dismissed upon a Rule

Therefore, I will not strike Plaintiffs' prayer for relief for punitive damages and attorneys' fees at this time.

### III.   <u>Conclusion</u>

For the foregoing reasons, the stay in this case is LIFTED, and Defendants' partial motion to dismiss Plaintiffs' Complaint under Rule 12(b)(6) and Defendants' motion to transfer the remaining claims to the Middle District of Pennsylvania are DENIED.  The Clerk of Court is respectfully directed to terminate the open motions at Docs. 10, 40, and 41.

SO ORDERED.

Dated: February 11, 2022
    New York, New York

Vernon S. Broderick
United States District Judge

---

12(b)(6) motion for failure to state a claim," (Defs.' Reply 3 (citing *Roman Catholic Diocese of Rockville Centre v. Gen. Reinsurance Corp.*, No. 16 Civ. 02063 (CM), 2016 WL 5793996 (S.D.N.Y. Sept. 23, 2016); *Avnet, Inc. v. Am. Motorists Ins. Co.*, 684 F. Supp. 814 (S.D.N.Y. 1988)), in both cases, the courts had already dismissed the fraud claim that could give rise to such damages.  Here, Plaintiffs' fraud claim survives the motion to dismiss.