UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BEYOND BESPOKE TAILORS, INC. and
NICK TORRES,
                                        Plaintiffs,

                    -against-


JAMES BARCHIESI *et al.*,
                                        Defendants.
-------------------------------------------------------------------X
JAMES BARCHIESI,
                            Third-Party Plaintiff,

                    -against-


LINDA ROTH d/b/a ROTH CPA, ROTH
ASSOCIATES and ROTH CERTIFIED PUBLIC
ACCOUNTANTS,
                            Third-Party Defendants.
-------------------------------------------------------------------X

**ORDER**

**20-cv-5482 (VSB) (JW)**

**JENNIFER E. WILLIS, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Beyond Bespoke Tailors, Inc. ("Beyond Bespoke"), a small tailor shop,

and its owner Nick Torres (collectively "Plaintiffs"), brought breach of contract,

fiduciary duty, and malpractice claims against their former friend and accountant,

James Barchiesi ("Defendant James" or "James"), and several entities owned or

managed by James.

The Parties have been embroiled in several contentious discovery disputes. See

Dkt. Nos. 178-87, 189-92, 193-95, 199, 237-39. The instant dispute centers around a

deposition involving questions related to Defendant James' brother Robert Barchiesi

("Attorney Robert" or "Robert"), an attorney who was admitted *pro hac vice* to

represent James. Plaintiffs assert that Attorney Robert was involved in the accounting business that is the subject of the underlying dispute. At a deposition, when Defendant James was asked questions regarding his Attorney Robert's involvement in the business, Defendant James and Attorney Robert (collectively the "Barchiesi Brothers") ended the deposition. Now, Plaintiffs seek sanctions and to strike Defendant's Answer. Dkt. No. 178; Dkt. No. 184. In response, Defendant moved for sanctions and to compel production of Plaintiffs' tax returns. Dkt. No. 181.

Because the Barchiesi Brothers stormed out of the deposition, Plaintiffs' and Third-Party Defendants' Motions for Sanctions are GRANTED. Plaintiffs are thus entitled to the costs of conducting the deposition. However, since striking an Answer is an extreme remedy, the Motion to Strike is DENIED.

Because Plaintiffs should provide electronic versions of the requested tax documents, Defendant's Motion to Compel is also GRANTED. For this reason, Plaintiffs' request for the costs of opposing the Motion is DENIED. The Plaintiffs shall produce digital versions of the requested tax documents, and the Parties shall evenly divide the cost of doing so. Finally, since Defendant never met to confer with Plaintiffs prior to filing the Motion to Compel tax documents, Defendant's Motion for Sanctions under Rule 37 is DENIED.

## I. BACKGROUND

### The Underlying Lawsuit

In 2019, Nick Torres and Beyond Bespoke initiated a lawsuit in New York against James Barchiesi and Defendants Worksite LLC, Worksite Accountants and

Advisors, Worksite Capital Partners, LLC, Worksite Interactive LLC, Worksite Ventures, and Roth & Associates ("Corporate Defendants"). <u>See</u> Dkt. No. 1; Dkt. No. 99. The Notice of Removal was filed in July 2020. Dkt. No. 1. The Complaint was filed in October 2020. Dkt. No. 4.

Beyond Bespoke is a tailoring business based in Manhattan. Dkt. No. 4 ¶¶ 2, 12. Torres is the founder of Beyond Bespoke. <u>Id.</u> ¶ 2. Defendant James is the owner and manager of Corporate Defendants, which are businesses that provided financial bookkeeping, accounting, and tax services to Plaintiffs. <u>Id.</u> ¶¶ 4, 26. Plaintiffs raised claims of fraud, breach of fiduciary duty, and breach of contract against James and the Corporate Defendants. <u>Id.</u> ¶ 1.

**Supplemental Filings**

Counsel for Defendant James and the Corporate Defendants filed a motion to withdraw in June, 2021, (Dkt. No. 35), which was granted. Dkt. No. 42. Since Corporate Defendants never secured new counsel, and since corporations may not appear pro se in federal court, <u>see, e.g.,</u> <u>Rowland v. California Men's Colony, Unit II Men's Advisory Council</u>, 506 U.S. 194, 201–02 (1993), Judge Broderick entered a default judgment against the Corporate Defendants in February 2022. Dk. No. 99.

In November 2021, Defendant James filed a third-party complaint against Linda Roth, Roth Associates, and Roth Certified Public Accountants (the "Roth Defendants" or "Roth"). Dkt. No. 68. The Complaint alleged two causes of action: breach of contract and indemnification. <u>Id.</u> ¶¶ 24–35. In February 2022, the Roth Defendants filed a motion to dismiss. Dkt. No. 95.

3

**Attorney Robert**

Defendant James elected to proceed *pro se* until February 24, 2022, when his brother Robert C. Barchiesi filed a motion to be admitted *pro hac vice* in order to represent his brother James. Dkt. Nos. 108-109. Attorney Robert has represented Defendant James since that time.

**The October Deposition**

In October 2022, the Parties agreed on a deposition schedule and exchanged document requests. Dkt. No. 179 ¶¶ 18-21. On October 12, 2022, the Defendant James and his Attorney Robert appeared for a deposition at the office of Plaintiffs' counsel. Id. ¶ 25.

Counsel for Roth Defendants began the deposition questioning. Id. ¶ 31. When counsel for Roth began to question Defendant James about his brother's role in what Plaintiffs claim to be the Barchiesi family businesses, Attorney Robert objected on the ground that counsel for Roth was "trying to create a conflict of interest in a representation." Id. at ¶ 32.

Attorney Robert then stated that he was going to suspend the deposition so that he could make a motion under Rule 30. Id. at 33. According to the Declaration from Plaintiffs' counsel, "Plaintiff and Third-Party Defendant tried, unsuccessfully, to persuade Defendant's counsel to join in a call to the Court or at least proceed without answering the questions at issue, Defendant and his counsel walked out of the deposition." Id. at ¶ 34; Dkt. No. 180 at 10-11. Attorney Robert also canceled the

deposition of Plaintiffs, which had been scheduled for the next day. Dkt. No. 179 ¶ 42; Dkt. No. 180 at 10.

### The November Conference

This Court held a discovery conference on November 3, 2022. Dkt. No. 166. At the conference, the Parties discussed Defendant James' assertion of privilege, the need to call the Court for any deposition disputes, and the Parties' agreement that questions regarding Attorney Robert's involvement in the businesses would be permitted. Dkt. No. 235.

Following that conference, the Court ordered that "Defendant Barchiesi's motion to terminate or limit the scope and manner of the deposition of Defendant Barchiesi is denied as moot. The Parties have agreed that the deposition of Defendant Barchiesi will resume and **questions about the extent, if any, of his brother Robert Barchiesi's involvement in Defendants' businesses will be permitted**. Defendant Barchiesi shall have separate counsel for the limited purpose of responding to such questions." See Dkt. No. 165 at 2 (emphasis added). The Court also granted the Plaintiffs' request for leave to move for sanctions. Id.

### The January Deposition

At a follow-up deposition on January 24, 2023, Defendant James again refused to answer deposition questions about the extent of his Attorney Robert's involvement in James' businesses. See Dkt. No. 179 at ¶ 52; Dkt. No. 179-9, *Deposition Transcript* at 295:18 - 296:9 ("[d]id your brother have any involvement in any of the Worksite

5

companies prior to him becoming a member of the Pennsylvania Bar on October 29, 2019?" Defendant stated, "I am not going to answer any questions related to that.").

**The Instant Motions**

On February 9, 2023, the Plaintiffs filed a letter seeking sanctions and leave to move to strike Defendant's Answer. Dkt No. 172. On February 14, 2023, Defendant responded requesting a briefing schedule on Plaintiffs' proposed motion. That same letter requested a briefing schedule to cross-move for a protective order, and to compel discovery and sanctions. Dkt No. 173. In that letter, Defendant asserts that Plaintiffs have not provided "pertinent tax documents". Dkt. No. 183 at 5; see also Dkt. No. 182-2.

## II. LEGAL STANDARD

Generally, parties "may obtain discovery into any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." See Fed. R. Civ. P. 26(b)(1); IBM Corp. v. Micro Focus (US), Inc., No. 22-CV-9910 (VB)(VR), 2024 WL 965290, at *2 (S.D.N.Y. Mar. 6, 2024). A party resisting discovery must "specifically" show how the discovery sought is "not relevant or … is overly broad, burdensome or oppressive." Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984); see also In re Terrorist Attacks on Sept. 11, 2001, No. 02-CV-6977 (GBD) (FM), 2012 WL 135695 (S.D.N.Y. Jan. 17, 2012); Arias-Zeballos v. Tan, No. 06-CV-1268 (GEL) (KNF), 2007 WL 1599150 (S.D.N.Y. May 31, 2007).

A party may move to compel discovery under Rule 37, and motions to compel "are left to the sound discretion of the [district] court." <u>Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd.</u>, 327 F.R.D. 52, 54 (S.D.N.Y. 2018). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." <u>EM Ltd. v. Rep. of Arg.</u>, 695 F.3d 201, 207 (2d Cir. 2012).

## III. DISCUSSION

### A. Plaintiff's Motion to Strike & for Sanctions

#### 1. The November Conference and Order

At the November conference, the Court instructed the Parties that if a dispute arose during a deposition, the Parties should attempt to contact the Court or skip the objected-to segment of the deposition while the Parties waited for a ruling, rather than terminate the deposition.

There, the Court explained alternatives to terminating a deposition when confronted with a privilege issue:

> There were other options that should I think have been taken at that moment which is "I'm directing him not to answer. We're not going to answer these particular questions. We can continue on with the deposition that, you know, as I've said before this is not an area we're going into. We're contacting the Court or any of those things." Why were those things not done?...in the moment, when everyone has traveled and everybody is traveling and we're in the middle of a deposition and a dispute comes up, there were procedures that should have come into play which you declined to take, and then you also canceled these additional two depositions that were scheduled for the next day. <u>See</u> Dkt. No. 235 at 29.

The Court also detailed its understanding that the Parties agreed to permit this line of questioning:

7

It sounds as if everyone is in agreement with the idea that the deposition of...defendant Barchiesi should resume. I  think you are exactly right that no matter how this case resolves at the end that it makes sense for that deposition for him... for that limited purpose to have additional counsel... Dkt. No. 235 at 61.

At the conference, the Barchiesi Brothers agreed that the Court accurately

characterized their positions:

MR. BARCHIESI: Your Honor, I think it seems that everyone is aligned and in agreement with that position. I do believe that Your Honor obviously summarized it quite succinctly and correctly. It would be, you know, our position that it may obviate the need for any further deposition or testimony from this  counsel. And obviously I think it may have resolved the  issue with respect to a protective order insofar as it concerns the testimony of James Barchiesi. Dkt. No. 235 at 62.

The Court then followed up the conference with a written Order that explicitly

stated: "**questions about the extent, if any, of his brother Robert Barchiesi's**

**involvement in Defendants' businesses will be permitted**. Defendant Barchiesi

shall have separate counsel for the limited purpose of responding to such questions."

See Dkt. No. 165 at 2 (emphasis added). Thus, the Court already concluded, and the

Parties already agreed, that these questions were proper and not privileged.

Under the "law of the case" doctrine, courts should not revisit issues they have

already ruled on absent "exceptional circumstances." Perry v. City of New York, 552

F. Supp. 3d 433, 449 (S.D.N.Y. 2021)(citing Doe v. East Lyme Bd. of Educ., 962 F.3d

649, 662 (2d Cir. 2020)). At the November conference, the Court made clear that

Defendant James needed to answer questions regarding his brother's involvement in

the businesses. The Court will not reconsider this determination.

### 2. Attorney-Client Privilege

Even if this issue hadn't already been decided, this line of questioning was not categorically protected by attorney-client privilege. At the deposition, Mr. Pulito, counsel for Roth Defendants, inquired about whether Attorney Robert was a managing partner in LedgerWorks, allegedly a Barchiesi family business. Dkt. No. 253 at 19. This issue is relevant to whether Attorney Robert is a potential witness, so it is a relevant question to ask at a deposition. Chen-Oster v. Goldman, Sachs & Co., No. 10-CV-6950 (AT) (JCF)293 F.R.D. 557 (S.D.N.Y. 2013)(finding names of potential witnesses relevant); see generally Cohen v. Cohen, No. 09-CV-10230 (LAP), 2015 WL 4469704 (S.D.N.Y. June 29, 2015). Having established that this line of questions is relevant, the Court now turns to whether it delves into territory that is privileged.

Privileged matters are a special exception to the standard deposition procedure. Under Rule 30, "a person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir.2007); United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012). The "burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997).

The focus of the inquiry is on *confidential communications*, not whether or not an attorney-client relationship exists in the first place. See generally In re Shargel, 742 F.2d 61 (2d Cir. 1984). "The privilege attaches, not to the information itself, but to the communication of the information." See Roytlender v. D. Malek Realty, LLC, No. 21-CV-00052(MKB)(JMW), 2022 WL 5245584, at *3 (E.D.N.Y. Oct. 6, 2022)(citing Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., No. 95 CIV. 8833 (RPP), 1998 WL 2829, at *4 (S.D.N.Y. Jan. 6, 1998).

The identity of a client and the existence of an attorney-client relationship are not privileged. In fact, "client identity" is "not privileged even though it might incriminate the client." United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 505 (2d Cir. 1991). Courts have even found it proper to ask whether a lawyer instructed a client to preserve documents where the questions did not seek "the content of any instruction or the litigation hold notice itself." Roytlender v. D. Malek Realty, LLC, No. 21-CV-00052(MKB)(JMW), 2022 WL 5245584, at *5 (E.D.N.Y. Oct. 6, 2022). Thus, in Roytlender, that information was "not protected by the attorney-client privilege." Id.

If the existence of an attorney-client relationship between Defendant James and his Attorney Robert is not protected by the privilege, then whether Robert was a managing partner in LedgerWorks or otherwise involved in the family business is similarly not privileged. Therefore, attorney-client privilege does not insulate the Barchiesi Brothers from deposition inquiries on this issue.

10

### 3. The Destroyed Depositions

Because attorney-client privilege did not protect the Barchiesi Brothers from the questions asked at the October deposition, Defendant is responsible for the disruption of that deposition.

Caselaw is clear that a party who has an objection to a question cannot unilaterally terminate the deposition. See Hanlin v. Mitchelson, 623 F. Supp. 452, 455 (S.D.N.Y. 1985), aff'd in part, rev'd in part, 794 F.2d 834 (2d Cir. 1986); In re Omeprazole Pat. Litig., 2005 WL 818821, at *5 (S.D.N.Y. Feb. 18, 2005), aff'd, 227 F.R.D. 227 (S.D.N.Y. 2005); Nat'l Microsales Corp. v. Chase Manhattan Bank, N.A., 761 F. Supp. 304, 307–08 (S.D.N.Y. 1991); ACLI Gov't Sec., Inc. v. Rhoades, No. 81 CIV. 2555 (MEL), 1991 WL 270450, at *2 (S.D.N.Y. Dec. 5, 1991); Reichmann v. Neumann, 553 F. Supp. 2d 307, 309 (S.D.N.Y. 2008); Dino Antolini v. Amy McCloskey, No. 19-CV-09038(GBD)(SDA), 2021 WL 5411176, at *7 (S.D.N.Y. Nov. 19, 2021), adopted sub nom. Antolini v. McCloskey, No. 19-CV-09038(GBD)(SDA), 2022 WL 1689331 (S.D.N.Y. May 26, 2022); Shapiro v. Freeman, 38 F.R.D. 308, 311–12 (S.D.N.Y. 1965).

This is true even for objections made to preserve attorney-client privilege under Rule 30. See generally In re Omeprazole Pat. Litig., No. M-21-81(BSJ), 2005 WL 818821 (S.D.N.Y. Feb. 18, 2005), aff'd, 227 F.R.D. 227 (S.D.N.Y. 2005). Courts have accordingly held that sanctions are appropriate where "the attorney's conduct essentially destroys a deposition." Roytlender v. D. Malek Realty, LLC, No. 21CV00052MKBJMW, 2022 WL 5245584, at *5 (E.D.N.Y. Oct. 6, 2022).

11

For Defendant James to refuse to answer these questions at both the October and January depositions was unacceptable and sanctionable. For these reasons, the Motion for Sanctions is granted. Plaintiffs and Roth Defendants are entitled to the costs of conducting the deposition.

### 3. Calculation of Sanction

The Court's previous Order granting the request for leave to file a motion for sanctions directed that the Motion "shall be limited to the costs related to Defendant Barchiesi's deposition." Dkt. No. 165.

Rule 37(a)(5) "applies to [an] award of expenses" made in connection with an application for an order under Fed. R. Civ. P. 26(c)(3). White v. UMG Recordings, Inc., No. 20-CV-9971(AT)(OTW), 2023 WL 5806194, at *2 (S.D.N.Y. Aug. 14, 2023). When a party wins a discovery motion, as here, Rule 37(a)(5)(A) provides that "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred making the motion, including attorney's fees." Id.

Defendant objects to the sanctions, arguing that "at the time of the Defendant's initial deposition there was no order imposed on the Defendant to testify about his attorney" and that "the Movants will be unable to demonstrate that the Defendant was willfully non-compliant with the Court." Dkt. No. 194 at 10. But Rule 30(d) explicitly permits sanctions for anyone who "impedes, delays, or frustrates" a deposition. See Fed. R. Civ. P. 30(d)(2); Antolini, 2021 WL 5411176, at *12. Rule 30(d)

12

then incorporates Rule 37: "*Award of Expenses.* Rule 37(a)(5) applies to the award of expenses." <u>See</u> Fed. R. Civ. P. 30(d)(3)(c).

Generally, the decision to impose sanctions under Rule 37 "is committed to the sound discretion of the district court." <u>Luft v. Crown Publishers, Inc.</u>, 906 F.2d 862, 865 (2d Cir. 1990). The purpose of sanctions "is not compensation of the victimized party but rather…deterrence..." <u>On Time Aviation, Inc. v. Bombardier Cap., Inc.</u>, 354 F. App'x 448, 452 (2d Cir. 2009). For this reason, the Second Circuit has held that Courts awarding sanctions are not restricted to fees "actually charged to the client." <u>CBF Industria de Gusa S/A v. AMCI Holdings, Inc.</u>, 342 F.R.D. 84, 90 (S.D.N.Y. 2022)(citing <u>Liebowitz v. Bandshell Artist Mgmt.</u>, 6 F.4th 267, 287 (2d Cir. 2021).

Nevertheless, courts "traditionally determine" attorneys' fee awards under Rule 37 through the "lodestar" calculation, which is "the number of hours expended multiplied by a reasonable hourly rate." <u>White</u>, 2023 WL 5806194, at *4 (S.D.N.Y. Aug. 14, 2023); <u>Venus By Maria Tash, Inc.</u>, 21-CV-2098, 2022 WL 4085747, at *6 (S.D.N.Y. Aug. 24, 2022). The lodestar calculation creates a "presumptively reasonable fee." <u>See</u> <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011). Courts have held that the party seeking an award of attorneys' fees should submit evidence "supporting the hours worked and rates claimed." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

Plaintiffs and the Roth Defendants have done so here. According to Plaintiffs' attorney, Mr. Gordon, he spent 17.75 hours preparing for the deposition. Dkt. No. 179 at 5. At an hourly rate of $575, this amounts to $10,206.25. He also incurred $757.25

13

on a court reporter for the deposition. Id. The deposition lasted approximately an hour and a half. Dkt. No. 179-7. At a rate of $575, this amounts to $862.50 for the time spent during the deposition. This represents **a total of $11,826.**

The Roth Defendants' attorney Mr. Pulito also submitted his time. He claimed hotel and food costs of $321.58, car rental costs of $133.60, gas costs of $79.54, time spent driving of $3,135 (13.2 hrs x $475 = $6,270 ÷ 2 [courtesy discount]), time attending the deposition of one hour,  $475.00 (1 hr x $475), and the costs of a transcript $954.64 ($1,909.28 ÷ 2) for **a total of $5,099.36**. Dkt. No. 185 at 2.

Defendant submitted numerous filings opposing the Motion for Sanctions. See Dkt. Nos. 186; 192-195; 200. In none of these filings did Defendants challenge the fees submitted as unreasonable.

**The Court therefore directs Defendant to pay Plaintiffs $11,826 and Third-party Defendants $5,099.36 within sixty days of entry of this Order.**

Plaintiffs also seek to strike Defendant's answer, alleging that the Barchiesi Brothers "repeatedly and persistently disobeyed discovery orders." Dkt. No. 181 at 16. However, striking an answer is a "harsh remedy to be used only in extreme situations." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009). The Court declines to do so here.

**A. Defendant's Motion to Compel & Sanctions**

Defendant moves to compel Plaintiffs to produce tax documents and for sanctions. Plaintiffs' underlying claims are for breach of fiduciary duty, breach of contract, and malpractice, which allegedly caused Plaintiffs to pay "substantial tax

penalties and incur losses in connection with the expense of hiring a replacement accountant." Dkt. No. 4 ¶ 6.

In his initial document requests, Defendant James asked for "pertinent tax documents and more broadly all documents which support Plaintiffs' claim for damages as alleged in the Complaint." Dkt. No. 183 at 5. Specifically, Defendant sought the production of payroll and sales tax information. Dkt. No. 182-2.

Plaintiffs counter that (1) they have already produced the documents they have that are responsive to these requests, and (2) Defendant failed to satisfy the meet-and-confer requirement before making his motion. Dkt. No. 191 at 4.

With respect to tax returns, for public policy reasons, courts often require a moving party to show a "compelling need" for tax documents, in part because they include sensitive information. See Sadofsky v. Fiesta Products, No. 06-CV-6533 (ADS)(ETB), 252 F.R.D. 143, 149-51 (E.D.N.Y. 2008) and Malinowski v. Wall St. Source, Inc., 09-CV-9592 (JGK)(JLC), 2011 WL 1226283 (S.D.N.Y. March 18, 2011).

Here, Plaintiffs' suit alleges malpractice by an accountant related to tax preparation. To defend against a tax preparation malpractice claim, the tax documents at issue are not just relevant but necessary. Moreover, the information in those documents "is not otherwise readily obtainable." Malinowski, 2011 WL 1226283, at *3. Hence, there is a "compelling need" for the production of tax documents in this case.

Moreover, Plaintiffs do not object to producing these documents. They state that they have already made the documents available for inspection. Plaintiffs have

offered to produce electronic versions  "at Defendant's cost". Dkt. Nos. 191 at 7; 179 ¶ 13.

Generally, a party bears the burden of producing its own documents. However, the Court has the discretion to apportion the costs of discovery among the parties. The Supreme Court has held that a trial court has discretion to issue "orders conditioning discovery on the requesting party's payment of the costs of discovery." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978).  Rule 26 explicitly grants a trial court this power. It states that the court "may…issue an order…specifying terms, including…the allocation of expenses, for the disclosure or discovery . . ." See Fed R. Civ. P. 26(c)(1)(B). Here, the Court has determined the most efficient and fair path forward is for the Parties to evenly split the cost of producing electronic versions of the tax documents.

Defendant also moves for sanctions for the failure to produce the tax documents. However, a party is required to meet and confer prior to moving for sanctions. See Fed. R. Civ. P. 37. The failure to do so "is sufficient reason by itself" to deny the Motion. See Vaigasi v. Solow Mgmt. Corp., No. 11-CV-5088(RMB)(HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016)(collecting cases). Rule 37 states that the motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See Fed. R. Civ. P. 37(a)(1); Excess Ins. Co. v. Rochdale Ins. Co., No. 05-CV-10174, 2007 WL 2900217 (S.D.N.Y. Oct. 4, 2007).

16

At the last conference, the Court explicitly noted that the Parties needed to meet and confer on this issue:

> And then this last issue about production of tax documents, again, I'm not going to rule or compel anything in that respect. I consider that also an issue that is not yet ripe. From what the parties have said to say, plaintiff is ready and willing to produce those documents, but **the parties need to meet and confer on exactly what documents defendant believes he needs**, and once he's identified those, plaintiff will produce them. Dkt. No. 235 at 71. (emphasis added)

Plaintiffs claim Defendant's counsel did not attempt to meet. Dkt. No. 191 at 13-14; Dkt. No. 183 at 7. Defendant counters that "there was no effort on the part of Plaintiff's counsel to meet and confer." Dkt. No. 183 at 7. But as the movant on this Motion to Compel, it was Defendant's burden to arrange the meet and confer. <u>Baez Duran v. E L G Parking Inc.</u>, No. 18-CV-6685(GBD)(SLC), 2021 WL 1338982, at *2 (S.D.N.Y. Apr. 9, 2021); <u>Fox v. Cheminova, Inc.</u>, No. 00-CV-5145(TCP)(ETB), 2006 WL 508087 (E.D.N.Y. Mar. 1, 2006). Thus, this failure to meet and confer "dooms" the application. <u>See</u> <u>Olin Corp. v. Lamorak Ins. Co.</u>, No. 84-CV-1968 (JSR), 2021 WL 396781, at *10 (S.D.N.Y. Feb. 4, 2021).

Moreover, Plaintiffs have already made their tax documents available for inspection. Dkt. No. 191 at 4. For these reasons, despite granting the Motion to Compel, the Court declines to award any sanctions to Defendant James.

### IV. CONCLUSION

For all the above reasons, Plaintiffs' and the Third-Party Defendants' Motion for Sanctions is GRANTED, but their Motion to Strike is DENIED. Defendant's Motion to Compel is GRANTED, but Defendant's Motion for Sanctions is DENIED.

The Court therefore directs Defendant to pay Plaintiffs $11,826 and Third-Party Defendants $5,099.36 within sixty days of the entry of this Order.

**The Clerk of the Court is respectfully requested to close Dkt. Nos. 178, 181, 184, 228, 229, and 237.**

SO ORDERED.

DATED:    New York, New York
          March 18, 2024

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

18